117-0798 Matteson Elementary School District 159 v. Maynard & Payton Councilors, you may proceed. Thank you. We're discussing whether the sound is an animal at loose somewhere up here or is commenting on argument. I don't know. Let's see if I can make it through without the animal. May it please the Court, Council, my name is Britt Isley. I represent the Appellant, Matteson School District, Matteson Elementary School District 159. I'm actually covering this for Aaron Baker, my colleague at Ansel Blank. I'd like to reserve five minutes for rebuttal. You always have five in reply. Thank you. I'd like to touch on three points supporting your arguments. First, all the exams that Ms. Higgins had following her February 16, 2011 accident, in the months, in the immediacy of the accident, were pretty much normal for her left knee and for her low back. Only at the end of 2011 did her pre-existing natural degeneration in her knee and her back become worse. And in fact, she continued to work full duty as a teacher throughout the entire school year following the February 2011 accident. For example, a February 21, 2011 exam by Dr. Zavala was completely normal after he looked at her back and her left knee, and she was released just with back and left knee pain. A May 5, 2011 MRI of the left knee showed advanced degenerative changes, but no acute problem. And an August 26, 2011 CT scan of her lumbar spine was stable, with no abnormalities. So again, it was only at the end of that year that we started to see problems, and we argue that it's just the natural progression of her degenerative problems in her back and knee that popped up at the end of that year. So wasn't there medical opinions on that issue? There had been medical opinions, and I recognize that this is a manifest way case, and the commission and the circuit court relied on the treating doctor's opinions from Dr. Neal and Dr. Hurley over those of the IME Dr. Sushi. But I'd like to point out these factual flaws. Immediately after her accident, in other words, this temporal relationship before she really started having problems. The second point I'd like to make is the commission's decision contains numerous inaccuracies and mischaracterizations of the evidence. For example, the commission's decision says that Dr. Sushi, the IME doctor during his exam, checked Higgins' knee, but not her back. That's false. As Dr. Sushi confirmed in his testimony, he did a full examination of both her back and her left knee. Could you take a look at paragraph 33 of the commission's decision, where they recount that Dr. Sushi examined both her knee and her back? Here, Cherry picked the decision. Sushi was opposed by a respondent on June the 25th, 2013. He testified as a board-certified surgeon. He examined the petitioner on May the 27th, 2011. Reviewed medical records. That was the only time examined her. On his examination, he noted no atrophy or fusion in her leg. He examined her back. Appears to have been normal. The commission was well aware that he had examined both her knee and her back. You're right, Your Honor. I take that back. It looks like they changed it. But there was a paragraph early on where they... No, I understand. Perhaps they were just going through the testimony in the record. But, yes, it does look like they ultimately saw that he examined both. And I think in the same vein, there may have been a correction in the commission's decision. But initially, the commission had stated that, quote, there's absolutely no evidence of any previous complaints or treatment to her knee whatsoever. Again, this was a false statement. Its records were admitted from well removed, showing left leg treatment. And now look at paragraph 12 of their decision. Medical records include treatment notes from prior to the instant injury. December 10th, complaint of neck and back pain, which was characterized as musculoskeletal, was referred for physical therapy. September 7th, presented normal follow-up complaint of reoccurring left side low back, breaking down her left leg. So they didn't correct themselves. My point is that with the inaccuracies that they did have in their decision, although arguably they corrected them, the rule is that the arbitrator's findings and award may be relied upon and sustained when the commission's decision is against the manifest weight of the evidence. Here, looking at the facts of her condition, her normal condition after her accident, and then ultimately getting worse over time, I would argue that the decision is against the manifest weight of the evidence here. And finally, my third point, and I understand that the issue of penalties and whether the commission in certain courts' refusal to award penalties is a subject of my counsel and my opponent's cross-appeal, I'd like to address it first. Well, tell us how we can address it. The commission never ruled on the issue of penalties and fees. The commission did not, no. But I preemptively wanted to argue, I guess I can hold on to this until my rebuttal, but I wanted to point out that the school district, in good faith, relied on the opinions of its own Section 12 physician, Dr. Tsuji, and with Dr. Tsuji, we challenged the liability to pay TTD and not the payments. Well, wait a minute. But I think Judge Hutchison is right. How can we address the propriety of the denial of penalties when the commission never addressed it? So if we were to make a determination of the trial court error in affirming the commission on penalties when the commission never, ever addressed penalties, then I suppose the only thing we can do is reverse it and send it back to the commission and tell them to address it. I mean, the trial judge has no right to address it first, does he? Would you disagree with that? No, I don't want that done. I certainly don't want it reversed and sent back. So for now, I'll wait for my rebuttal. Okay, very good. And you'll have rebuttal. Thank you. Thank you. Counsel, you may respond. Your Honors, may I please the court, the President of the State of Mississippi, on behalf of the defendant, Mary Ann Higgins. This is a case that goes well beyond manifest way. On behalf of the petitioner, I believe we proved this beyond a reasonable doubt. Reasonable doubt to the extent, excuse me, that the doctors all identified causal connection. They identified the accident, the injury that caused the knee pain, which was a meniscal tear and required 30% removal of the meniscus. They identified at that time that the injury that was sustained on February 16th was a direct activating factor of a pre-existing condition that she may have had. As a result of that, she was taken off from her employment from August of 2011 through December of 2011. Subsequent to that time, or in conjunction with that time, she was being seen by Dr. Hurley, who was the orthopedic doctor for her back. Dr. Hurley took her off of all job duties until her return for a short brief period in August of 2013. At that time, there was no temporary total disability paid beyond what they're claiming. Now, I have an issue to present to this court that the response, excuse me, that the plaintiff in this particular matter is not being completely forthright in terms of the payments that were made in terms of temporary total disability and or not at all. The stipulation sheet indicates that medical has been paid. However, the record is completely devoid of any medical being paid on behalf of the respondent. It was all paid by the group insurance carrier. Temporary total disability. Dr. Suchi identifies that everything was causally connected through December of 2012, but yet the amount that they paid was only $15,861, I believe. The amount that they should have been paying during that period, during that same period. Can I ask you a question? What does that have to do with the issues that your opponent raised on appeal? Well, it has everything to do with finding that Dr. Suchi is not credible, that there are penalties and attorneys to be used that should be attached to this. Wait a minute. Did the commission ever, ever rule on penalties and attorneys fees? The argument of... That's a yes or a no, Mr. DeCipio. Did they ever rule on penalties or attorneys fees? The answer to your question, Your Honor, is they did not. They did not. So how in heaven's name could Judge Walker review it? Because it was an argument that was brought up at arbitration. At the time of appeal to the circuit court, all issues are present before the circuit court. Mr. DeCipio, there's no dispute that the commission could have ruled on this. They didn't. That's correct. So he had nothing to review. But it's all issues that were presented to the arbitrator, Your Honor. No, it's all issues that are presented to the commission, not to the arbitrator. Mr. DeCipio, do we review in this tribunal the decision of the arbitrator, the decision of the circuit court, or the decision of the commission on the issues presented? I think the answer is the commission. That is correct. Well, then I just undercut your argument. What are we doing? We're doing something that the commission never addressed. It doesn't matter what happened before that or after that. Fair enough. If that's your prerogative, then... No, it's the law. It's the law. You have no commission's decision on that issue. But is it possibly a remand for hearing on the issue? Possibly. That's a different issue. Can I ask you another question? Sure. Who prepared this arbitrator's decision? Do you have any idea? Respondent. Because it says in here, the petitioner's current condition of ill-being is not causally related to the accident, and then the arbitrator awards a temporary permanent disability for both the back and the leg. Exactly. Does that make sense to you? No, sir. Absolutely no sense whatsoever. That's true. And that's exactly why the reason why the decision of the industrial commission should stand in its entirety. Regardless of penalties and attorneys' fees that I'm seeking before this court, it's clear that Dr. Shucci did not have the records of credibility. He examined her for 15 minutes based on the testimony of Ms. Higgins. The testimony of Ms. Higgins is clear. He never examined her for her back. Regardless of what the record says, it's clear from her testimony, which is unrefined, that the petitioner was never examined for back issues with Dr. Shucci. And you also have the testimony of Neal and Hurley, who supported causal connection. Correct? It is correct. Okay. I have nothing further to add. Thank you. Thank you, counsel. Counsel, you may reply. Actually, I'll waive my reply. Okay. Okay. Very good. Okay. Thank you, counsel, both, for your arguments in this matter. It will be taken under advisement of the original disposition of Shelley Shutes. Okay.